■ In the Matter of NEW YORK STATE OFFICE OF MENTAL HEALTH, Petitioner, v NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents. (And Another Related Proceeding.) [861 NYS2d 223]—

Spain, J.P. Proceedings pursuant to Executive Law § 298 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent State Division of Human Rights which, among other things, found petitioner guilty of an unlawful discriminatory practice based on disability.

Respondent Alphonso Purse Jr. began working as a safety officer for petitioner in 1978 and, during the period relevant to the instant proceeding, was assigned to the Manhattan Psychiatric Center. In October 1991, with the assistance of petitioner's Employee Assistance Program, Purse entered an inpatient rehabilitation program for alcohol abuse. Upon his release on or about November 3, 1991, Purse did not report back to work, but made several telephone calls to his supervisor, informing him that he would not be returning to work until November 18, 1991 for various reasons, including an injury to his leg. On November 21, 1991, petitioner's personnel office sent Purse a letter stating that, pursuant to the collective bargaining agreement (hereinafter CBA) between petitioner and Purse's union, he was considered to be absent from duty without authorization and he would be terminated on December 2, 1991 unless he provided a satisfactory explanation for his absence since his release from the program. The letter acknowledged that Purse had been in contact by telephone, but further stated that he had failed to report to the personnel office as instructed and to provide medical documentation for his absence. Although it appears that Purse did not receive the letter, in early December 1991, he spoke with Gail Babb, petitioner's senior personnel administrator, who relayed the letter's contents. In response, Purse sent petitioner's personnel office a certified letter dated December 15, 1991, which included a note dated November 12, 1991 from the Queens-Long Island Medical Group, P.C. that diagnosed Purse as having osteoarthritis in his right knee and prescribed rest until November 18, 1991. Also included were two notes from physician Eshagh Wiseman, one dated November 26, 1991 and another dated December 5, 1991, recommending that Purse be excused from work until "further notice." Petitioner removed Purse from its payroll on or about December

2, 1991 and, in March 1992—despite his communications— terminated him.

In December 1992, Purse filed a verified complaint with respondent State Division of Human Rights (hereinafter SDHR) charging petitioner with an unlawful discriminatory practice based on his status as a recovering alcoholic. After investigation, SDHR determined that it had jurisdiction and that probable cause existed to believe that petitioner had engaged in the unlawful discriminatory practice complained of and recommended the matter for a public hearing. After various hearings before an Administrative Law Judge (hereinafter ALJ) between May 2002 and April 2004, the ALJ determined, as relevant here, that petitioner had engaged in a discriminatory practice and awarded Purse $5,000 for emotional distress. However, the ALJ further found that Purse was not entitled to back pay because he began to receive workers' compensation payments in close proximity to his separation from employment. Thereafter, SDHR upheld the ALJ's determination in most respects but reversed on the issue of back pay and awarded Purse an additional $385,750. Petitioner thereafter commenced this proceeding, which was subsequently transferred to this Court, seeking to annul SDHR's determination, and SDHR cross-petitioned for enforcement of its order.

This Court accords considerable deference to the determinations of SDHR due to its expertise in evaluating discrimination claims, and we will uphold such if supported by substantial evidence (*see Matter of New York State Energy Research & Dev. Auth. v New York State Div. of Human Rights*, 50 AD3d 1361, 1362 [2008]; *Matter of R & B Autobody & Radiator, Inc. v New York State Div. of Human Rights*, 31 AD3d 989, 990 [2006]). Moreover, "[a] determination may not be set aside 'merely because the opposite decision would have been reasonable and also sustainable' " (*Matter of Matteo v New York State Div. of Human Rights*, 306 AD2d 484, 485 [2003], quoting *Matter of Mize v State Div. of Human Rights*, 33 NY2d 53, 56 [1973]; *see Matter of Bemis v New York State Div. of Human Rights*, 26 AD3d 609, 611 [2006]). As such, we uphold SDHR's determination that petitioner engaged in an unlawful discriminatory practice.

After Purse satisfied his burden of setting forth a prima facie case of discrimination, petitioner offered Purse's violation of the CBA as a legitimate nondiscriminatory reason for his termination. The CBA states, in relevant part, that "[a]ny employee absent from work without authorization for ten consecutive workdays shall be deemed to have resigned from his [or her] po-

sition if he [or she] has not provided a satisfactory explanation for such absence on or before the eleventh workday following the commencement of such unauthorized absence." Here, the record demonstrates that, after failing to report to work on November 4, 1991, Purse contacted petitioner by telephone on November 7, 1991 putting petitioner on notice of his medically excused absence and, thereafter, followed with telephone calls on November 13, 1991 and November 18, 1991—the last of which he indicated that Purse would be absent for an indefinite period of time. After petitioner voluntarily placed Purse in a holding status until he furnished the proper documentation, Purse submitted the medical reports substantiating his absence in his letter dated December 15, 1991. Nonetheless, petitioner terminated Purse in March 1992. Consequently, on the record before us, we find that substantial evidence was present to support SDHR's determination that petitioner's proffered reason for terminating Purse was a pretext, that petitioner engaged in an unlawful discriminatory practice and that Purse was entitled to an award of $5,000 for emotional distress.

We disagree, however, with SDHR's determination that Purse was entitled to an award of back pay. The purpose of back pay is to make a person whole and redress the economic injury that has resulted from unlawful employment discrimination (*see Matter of Freudenthal v County of Nassau*, 99 NY2d 285, 291 [2003]; *see also Saulpaugh v Monroe Community Hosp.*, 4 F3d 134, 145 [2nd Cir 1993], *cert denied* 510 US 1164 [1994]). Thus, where losses in salary are attributable to disability and not the result of discrimination, an award of back pay should not be made (*see Matter of Bemis v New York State Div. of Human Rights*, 26 AD3d at 612-613; *see also Rivera v NIBCO, Inc.*, 384 F3d 822, 832-833 [9th Cir 2004], *cert denied* 544 US 905 [2005]; *Saulpaugh v Monroe Community Hosp.*, 4 F3d at 145). Here, the record demonstrates that Purse was removed from petitioner's payroll on December 2, 1991 and, as the result of a retroactive award, began receiving disability benefits on that same day. Thus, we find that SDHR erred in making the determination that Purse was entitled to a back pay award.

Lahtinen, Kane, Malone Jr. and Stein, JJ., concur. Adjudged that the determination is modified, without costs, by annulling so much thereof as awarded back pay to respondent Alphonso Purse Jr., and, as so modified, confirmed.